```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
GARY J. EGNATSKI

                    Plaintiff,

        -against-                    MEMORANDUM AND ORDER
                                     06-CV-1405 (JS)(ARL)


LOUISE MORTILLA and TERRY SOUDERS,

                    Defendants.
----------------------------------X
Appearances:
For Plaintiff:           Gary Egnatski, Pro se
                         120 Dekruif Place, Apt 3J
                         Bronx, New York 10475

For Defendants:          No appearances
```

SEYBERT, District Judge:

### Introduction

On February 10, 2006, pro se Plaintiff Gary Egnatski ("Plaintiff") commenced the instant action in the United States District Court for the Southern District of New York by filing a Complaint against Defendants Louise Mortilla ("Mortilla") and Terry Souders ("Souders"). On March 21, 2006, the action was transferred to this Court.

Pending before this Court is Plaintiff's request for permission to proceed in forma pauperis. For the reasons explained below, Plaintiff is granted permission to proceed in forma pauperis, but the Court sua sponte DISMISSES the Complaint. Plaintiff is granted forty-five (45) days from the date of this

Order to file an Amended Complaint.

## Background

The Complaint in this action totals thirty-two pages, and is accompanied by approximately one-hundred-fifty pages of exhibits. The submission is, at times, quite difficult to comprehend. The following is the best the Court can discern of the filing. At this early stage of the litigation, the Court presumes the truth of Plaintiff's allegations.

Plaintiff was married to Mortilla in 1984. The couple resided in California. During the marriage, Plaintiff worked as a musician and also worked on the development of a new musical instrument called the Flutar (a multi-stringed wooded instrument that resembles a guitar). Plaintiff played the Flutar at various venues, including Disneyland, and even performed with the Flutar on a late-night television program. The marriage between Plaintiff and Mortilla produced one child, Alexandra. It is unclear when Alexandra was born.

Plaintiff and Mortilla separated in 1996 and Mortilla retained custody of Alexandra. In August 2002, Plaintiff moved to New York because he was "mentally failing." It appears that, at some point in late 2002, Mortilla obtained a judgment of divorce from a California Superior Court.

The gravamen of Plaintiff's claim in this action is that Mortilla improperly obtained Plaintiff's prototype Flutar as part

of the California Superior Court's judgment of divorce. Plaintiff insists that he is the inventor of the Flutar (and has submitted documents ostensibly corroborating this fact[1]) and requests its immediate return. He claims that the Superior Court was misled by Mortilla when it awarded Mortilla the Flutar as part of her share of the marital estate. Plaintiff was not present at the November 2002 Hearing when the Superior Court appears to have issued the order; the extent of his participation, if any, in the California matrimonial action remains unclear.

Plaintiff claims that Mortilla deceived the Superior Court into believing that the Flutar was community property, and also misrepresented the value of the Flutar. (Compl. at 3,4, 9.) Plaintiff avers that Mortilla falsely informed the Superior Court that the Flutar was created by Plaintiff in 1985 (after the marriage) and was worth $2,000.00 at the time of the November 2002 Hearing. These allegedly false statements led the Superior Court to erroneously award Mortilla the Flutar as her share of community property and credit Plaintiff $1,000 with respect to distribution of the marital estate.

Plaintiff has submitted several pieces of evidence that support his allegation that the Flutar was indeed created before

---

[1] One of the documents indicates that Plaintiff patented the Flutar in 1985. In addition, it appears that Plaintiff holds a patent (Number 4,993,300) concerning the method of "playing a fretted string instrument," presumably the Flutar, under a stage name, Gary Ejen. This patent was awarded in 1991.

the marriage. Most notably, Plaintiff has submitted a letter from former late-night talk show host Joe Franklin, indicating that Plaintiff performed on Franklin's show with the Flutar in 1983. (Compl. at 5-7.) Plaintiff also submitted a June 1983 article from a guitar trade magazine that discusses his work in developing the Flutar. With respect to value, Plaintiff avers that the Flutar with "equipoise shell" is worth $415,520.00. It is unclear how Plaintiff arrived at this figure, and the Court is not familiar with the term "equipoise shell." Plaintiff claims that, at an unspecified time, Mortilla "used a police officer" to seize the Flutar from his office in California. (See Compl. at 13-14.) Mortilla still retains possession of the instrument, and has recently relocated to Hicksville, New York.

Plaintiff alleges that Mortilla's continued possession of the Flutar has left him distraught and insolvent. He has submitted letters from doctors indicating that he suffers from bipolar disorder and depression. One of the doctors opines that Plaintiff's mental health would improve greatly with the Flutar's return. In addition, Plaintiff claims that the Flutar in Mortilla's possession is a prototype and her continued possession of the instrument is preventing Plaintiff from marketing it to the general public. The Complaint also indicates that the loss of the Flutar has caused Plaintiff to miss child support payments due to Mortilla, and has caused Plaintiff to default on his rent

obligations. Presumably, Plaintiff could derive revenue by playing the instrument.

The remainder of the Complaint contains allegations that Mortilla has threatened, tormented and blackmailed Plaintiff. Plaintiff claims that Mortilla falsely accused him of molesting Alexandra, and is presently holding his DNA in a safety deposit box for some diabolical purpose. The Complaint also contains allegations that Mortilla has been abusive of Alexandra.

## Discussion

I. Plaintiff's In Forma Pauperis Application

Pursuant to 28 U.S.C. § 1915(a)(1), a party may seek permission from the district court to commence a civil action in forma pauperis. See 28 U.S.C. § 1915(a)(1) ("any court of the United States may authorize the commencement . . . of any suit . . . without prepayment of fees or security therefore, by a person who submits an affidavit that includes a statement of all assets such prisoner [sic][2] possesses that the person is unable to pay such fees or give security therefor"). Upon review of Plaintiff's

---

[2] While the text of 28 U.S.C. § 1915(a)(1) appears to only provide for the in forma pauperis status of prisoner litigators, it is well-established that § 1915(a)(1) affords all natural persons with the opportunity to apply for permission to proceed without prepayment of fees. See Leonard v. Lacy, 88 F.3d 181, 183 (2d Cir. 1996) (listing the Prisoner Litigation Reform Act's revisions to 28 U.S.C. § 1915 and noting an error in § 1915(a)(1)); Powell v. Hoover, 956 F. Supp. 564, 566 (M.D. Pa. 1997) ("a fair reading of [§ 1915 in its entirety] is that it is not limited to prisoner suits").

declaration in support of his application to proceed in forma pauperis, the Court determines that Plaintiff's financial status qualifies him to commence this action without prepayment of filing fees. Therefore, Plaintiff's request to proceed in forma pauperis is GRANTED.

II. The Legal Sufficiency Of Plaintiff's Complaint

Notwithstanding a plaintiff's authorization to proceed in forma pauperis, a district court "shall dismiss the case . . . if it determines that . . . the action . . . fails to state a claim on which relief may be granted." See 28 U.S.C. § 1915(e)(2). Even affording Plaintiff's pro se Complaint a most liberal construction, see Cardenas-Arqudo v. Goord, No. 04-CV-2348, 2005 WL 578318 at *1 (E.D.N.Y. March 11, 2005), and assuming the truth of all allegations, see Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir. 1999), the Complaint does not withstand scrutiny.

There are serious difficulties with the legal feasability of Plaintiff's claims. First, Plaintiff's claims against Defendant Souders utterly fail to comply with the notice pleading requirements of Rule 8. See Fed. R. Civ. P. 8. From what the Court can discern, the only allegation against Defendant Souders is that he (or she) served as Plaintiff's counsel in the California matrimonial proceeding. There are no meaningful allegations indicating that Souders was somehow complicit in any allegedly unlawful conduct. Accordingly, Plaintiff's claims against Souders

are DISMISSED.

Second, one of the few discernible causes of action pled by Plaintiff purports to arise under 18 U.S.C. § 1832, "the Economic Espionage Act of 1996." The Act, however, does not provide for any private right of action. See Cooper Square Realty Inc. v. Jensen, No. 04-CV-1011, 2005 WL 53284 at **1-2 (S.D.N.Y. Jan. 10, 2005)("Because the EEA does not provide private litigants with a cause of action upon which they may press their claim, it cannot properly be the basis for federal subject matter jurisdiction"); Boyd v. Univ. of Illinois, No. 96-CV-9327, 1999 WL 782492 at *4 (S.D.N.Y. Sept. 30, 1999) ("To the extent that plaintiff relies on the 1996 Economic Espionage Act, 18 U.S.C. § 1831 et seq., his claim is dismissed. This Act is a criminal statute that affords no standing to any private citizen.").

Finally, Plaintiff's patent infringement claims are lacking. As explained by Judge Arthur D. Spatt:

> To state a claim for patent infringement, a plaintiff need only plead facts sufficient to place the defendant on notice of the asserted claim and to ensure that the defendant has adequate knowledge of the facts alleged in order to reasonably form a response. A complaint for patent infringement satisfies the above requirements, as well as the limited criteria of Rule 8(a), when the plaintiff: (1) alleges ownership of the asserted patent, (2) names each individual defendant, (3) cites the patent that is allegedly infringed, (4) describes the manner in which the defendants allegedly infringe, and (5) identifies the specific sections of the patent law invoked.

Home & Nature Inc. v. Sherman Specialty Co., Inc., 322 F. Supp. 2d

260, 265 (E.D.N.Y. 2004).

There can be no dispute that Plaintiff has adequately alleged the first three elements of an infringement claim. In addition, because of Plaintiff's pro se status, the Court does not require that he cite to specific sections of the patent law in support of his claim.

The Court, however, cannot relieve Plaintiff of the requirement that he must allege, with some degree of clarity, Mortilla's purportedly infringing conduct. The Complaint alleges that Mortilla obtained the Flutar pursuant to a California Superior Court decree and has retained possession thereafter. There is no allegation that the Superior Court decree has been vacated, thus Mortilla's continued possession of the Flutar is lawful. Aside from obtaining the Flutar pursuant to the Superior Court decree, Plaintiff does not allege that Mortilla has taken additional steps to impair his right to manufacture, use or sell the Flutar. Accordingly, even under a most liberal construction of the Complaint, see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), Plaintiff fails to state a claim for patent infringement.

Plaintiff's objection that Mortilla possesses a "prototype" version of the Flutar is not properly raised in this Court. In essence, Plaintiff asks this Court to overturn the California Superior Court's disposition of matrimonial property. But appellate review of such a state court determination is

precluded by the Rooker-Feldman doctrine. See Dist. Court of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., __ U.S. __, 125 S. Ct. 1517, 1521-22 161 L. Ed. 2d 454 (Mar. 30, 2005) ("The Rooker-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.") That Plaintiff has disguised his appeal as a patent infringement claim does not alter the outcome.

III. Subject Matter Jurisdiction

Because Plaintiff has failed to allege any cognizable federal claim, this Court lacks subject matter jurisdiction over this action. The Court does not reach the sufficiency of any state law claims that Plaintiff may have alleged. See Karmel v. Claiborne, Inc., No. 99-CV-3608, 2002 WL 1561126, at *3 (S.D.N.Y. July 15, 2002).

IV. Leave To Amend

In general, a district court should not dismiss a pro se complaint without first permitting the plaintiff leave to amend. See Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002) (citing

Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). Accordingly, Plaintiff is granted forty-five (45) days from the date of this order to file an amended complaint.

If Plaintiff elects to file an amended complaint, he is urged to comply with the following guidelines:

1. Each paragraph should be numbered and should only contain one factual allegation.

2. The factual allegations should, where possible, be organized in chronological fashion.

3. Each paragraph should be brief; the paragraph should state: (1) what is alleged to have occurred; (2) where possible, the date and location that the action is alleged to have occurred; (3) which of the Defendants is responsible for the alleged action; and (4) if appropriate, how the alleged action is related to a deprivation of the Plaintiff's rights.

## Conclusion

For the reasons explained above, Plaintiff's request for leave to proceed in forma pauperis is GRANTED, but the Complaint is DISMISSED. The Court GRANTS Plaintiff forty-five (45) days to amend his Complaint in accordance with this Order; failure to do so will result in dismissal of this case with prejudice.

SO ORDERED.

/s/ JOANNA SEYBERT
JOANNA SEYBERT, U.S.D.J.

Dated: Central Islip, New York
       July 21, 2006